# UNITED STATES DISTRICT COURT
for the
Southern District of Ohio

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )
) Case No. **3:19 mj 669**
2007 black Lexus, bearing Ohio license plate number )
GZA 7070, VIN# JTHBJ46G872129733 )
)

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

2007 black Lexus, bearing Ohio license plate number GZA 7070, VIN# JTHBJ46G872129733. Currently located at the Dayton Police Department Evidence Bay, 417 E. Helena St., Dayton, Ohio

located in the ___Southern___ District of ___Ohio___, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment A

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;
☑ contraband, fruits of crime, or other items illegally possessed;
☑ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 USC s. 841/21 USC s. 846 | possession with intent to distribute controlled substances/conspiracy |
| 21 USC 843(b)/21 USC s. 856 | use of a telephone facility/maintaining a drug premises |
| 18 USC s. 924(c) | possession of a firearm in furtherance of a drug trafficking crime |

The application is based on these facts:

Attached Affidavit of Robert M. Buzzard

☑ Continued on the attached sheet.
☐ Delayed notice of ____ days (give exact ending date if more than 30 days: ____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Robert M. Buzzard*
Applicant's signature

Robert M. Buzzard, SA of the FBI
Printed name and title

Sworn to before me and signed in my presence.

Date: 11-18-19

*Sharon L. Ovington*
Judge's signature

City and state: Dayton, Ohio
Sharon L. Ovington, US Magistrate Judge
Printed name and title

I, Robert M. Buzzard, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a warrant authorizing the search of the following vehicles for evidence, fruits, and instrumentalities of crimes — namely, 21 U.S.C. § 841(a)(1) (possession with intent to distribute controlled substances); 21 U.S.C. § 843(b) (use of a telephone communication facility to facilitate a drug trafficking crime); 21 U.S.C. § 846 (conspiracy to possess with intent to distribute controlled substances); 21 U.S.C. § 856 (maintaining a drug premises); and 18 U.S.C. § 924(c) (use and carrying of a firearm during and in relation to a drug trafficking crime):

   a. 2007 black Lexus, bearing Ohio license plate number GZA 7070, VIN# JTHBJ46G872129733. Currently located at the Dayton Police Department Evidence Bay, 417 E. Helena St., Dayton, Ohio. The vehicle is registered in the State of Ohio to Courtney Allen.

   b. 2005 white Chrysler 300, bearing Ohio personalized license plate CORTNER, VIN# 1J4EZ78Y9TC114512. Currently located at the Dayton Police Department Evidence Bay, 417 E. Helena St., Dayton, Ohio. The vehicle is registered in the State of Ohio to Sharon Cortner.

   c. 2013 black Dodge Ram pickup truck, bearing Ohio license plate number HHK 3486, VIN# 1C6RR6MTXDS558671. Currently located at the Dayton Police Department Evidence Bay, 417 E. Helena St., Dayton, Ohio. The vehicle is registered in the State of Ohio to John Senter V.

2. I am a Special Agent (SA) with the Federal Bureau of Investigation (FBI), and have been so employed since January of 2002. I am currently assigned to the Cincinnati Division, Dayton Resident Agency. As such, I am charged with investigating crimes against the United States of America, including but not limited to violations of Title 18 and Title 21 of the United States Code (U.S.C.). I have received training in drug trafficking investigations and participated in numerous narcotics-related investigations (ultimately leading to successful prosecution) that involved surveillance, the execution of search warrants, gathering evidence of money laundering, interviewing suspected drug traffickers, and supervising the activities of informants who provided information and assistance which resulted in the seizure of narcotics. I am familiar with federal drug laws, and am aware that it is a violation of Title 21, U.S.C., Sections 841(a)(l) and 846 to distribute and possess with intent to distribute controlled substances, as well as to conspire to do the same. I am also aware though my training and experience that drug traffickers commonly use vehicles to facilitate their drug trafficking activities/crimes.

3. Along with other agents, officers, and law enforcement officials from the DEA, ATF, and Dayton Police Department, I am currently involved in the investigation of drug trafficking and firearms offenses committed by Nathan GODDARD, Cahke CORTNER, Lionel COMBS III, and Courtney ALLEN – including violations of: 21 U.S.C. § 841(a)(1) (possession with intent to distribute controlled substances); 21 U.S.C. § 843(b) (use of a telephone communication facility to facilitate a drug trafficking crime); 21 U.S.C. § 846 (conspiracy to possess with intent to distribute controlled substances); 21 U.S.C. § 856 (maintaining a drug premises); and 18 U.S.C. § 924(c) (use and carrying of a firearm during and in relation to a drug trafficking crime) (hereinafter and collectively "Subject Offenses"). I have personally

participated in this investigation and have spoken to, as well as received information from, other agents and investigators participating in this matter. For purposes of this Affidavit, I have not distinguished between information of which I have direct knowledge and that of which I have hearsay knowledge. This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

## IDENTIFICATION OF THE VEHICLES TO BE SEARCHED

4. The property to be searched are the following vehicles:

   a. 2007 black Lexus, bearing Ohio license plate number GZA 7070, VIN# JTHBJ46G872129733. Currently located at the Dayton Police Department Evidence Bay, 417 E. Helena St., Dayton, Ohio. The vehicle is registered in the State of Ohio to Courtney Allen.

   b. 2005 white Chrysler 300, bearing Ohio personalized license plate CORTNER, VIN# 1J4EZ78Y9TC114512. Currently located at the Dayton Police Department Evidence Bay, 417 E. Helena St., Dayton, Ohio. The vehicle is registered in the State of Ohio to Sharon Cortner.

   c. 2013 black Dodge Ram pickup truck, bearing Ohio license plate number HHK 3486, VIN# 1C6RR6MTXDS558671. Currently located at the Dayton Police Department Evidence Bay, 417 E. Helena St., Dayton, Ohio. The vehicle is registered in the State of Ohio to John Senter V.

(collectively, the "Subject Vehicles").

3

5. I believe that there is probable cause to believe that evidence of the Subject Offenses will be found in the Subject Vehicles. The applied-for warrant would authorize the search of the Subject Vehicles for the purpose of seizing the items particularly described in Attachment A.

**PROBABLE CAUSE**

6. Between mid-July and late October 2019, members of the DEA Dayton Resident Office conducted an investigation into a Dayton, Ohio based fentanyl trafficking organization. During that investigation, investigators developed a Cooperating Defendant (hereinafter referred to as CD). CD provided information to members of the DEA investigative team for possible consideration in an on-going drug trafficking investigation.

7. During subsequent interviews, CD identified Nathan GODDARD as CD's source of supply for illegal narcotics. CD estimated she/he obtained approximately one pound of marijuana from GODDARD on or about November 3, 2019 inside a residence at 1454 Ruskin Rd., Dayton, Ohio. During that transaction, CD also observed approximately ten kilograms of suspected drugs present in the basement of the residence. GODDARD informed CD the ten kilograms of suspected drugs were fentanyl. On November 4, 2019, DEA investigators monitored a cellular telephone call between CD and GODDARD. CD called GODDARD at cellular telephone number 704-497-3706. During the conversation, CD and GODDARD discussed the prior purchase of marijuana on November 3, 2019 and GODDARD showing CD the kilograms of suspected fentanyl. CD asked GODDARD for the purchase price for one kilogram of fentanyl and GODDARD indicated $60,000. CD and GODDARD agreed to communicate at a later time to arrange for the purchase of fentanyl.

4

8. CD further explained to investigators there were two additional individuals inside the residence at 1454 Ruskin Rd. with GODDARD when the drug transaction occurred on November 3, 2019. The two individuals were later identified by the investigative team as Lionel COMBS III and Cahke CORTNER. CD explained COMBS and CORTNER witnessed the marijuana transaction on November 3, 2019 and reported the kilograms of suspected fentanyl were laying out in the open for everyone in the basement to see (including COMBS and CORTNER). In addition, CD observed CORTNER and GODDARD in possession of similar firearms during and in relation to the narcotics transaction. CD described CORTNER appeared to be acting as an enforcer or body guard for GODDARD during the marijuana transaction.

9. On November 4, 2019, DEA Special Agent Charles Vill obtained a search warrant for the residence at 1454 Ruskin Rd., Dayton, Ohio authorized by U.S. Magistrate Judge Sharon L. Ovington, Southern District of Ohio. The search warrant authorized the seizure of contraband (to include illegal narcotics), U.S. currency, firearms/ammunition, electronic devices (to include cellular telephones and computers), and other items associated with drug trafficking activities.

10. At approximately 6:50PM, on November 4, 2019, members of the DEA investigative team executed the federal search warrant at 1454 Ruskin Rd. Upon lawful entry into the residence, DEA Task Force Officer (TFO) Jorge Delrio was shot in the face by GODDARD as TFO Delrio descended down a stairway into the basement. Following the shooting, GODDARD, CORTNER, COMBS, and Courtney ALLEN were detained by DEA officers in the basement.

11. During a subsequent search of the residence, law enforcement officers located and seized pounds of marijuana, more than six kilograms of cocaine, more than four kilograms of fentanyl, over $40,000 in U.S. currency, the firearm GODDARD used to shoot TFO Delrio, a similar firearm possessed by CORTNER at the time of the search warrant, and a third firearm from the basement. Additionally, law enforcement officers located and seized the fourteen electronic devices from the residence. Based on my training and experience, I know the amount of narcotics seized from the residence is indicative of a large-scale drug trafficking operation. I also know that, given the amount of drugs found at the location and indicia of drug trafficking throughout the house – including, for instance, a digital scale and cash in the upstairs of the residence, I believe that the men detained at the Ruskin residence where using this location as a drug premises. I also know that COMBS rented the Ruskin residence; in a post-Miranda interview, COMBS confirmed that he knew GODDARD was storing large quantities of marijuana and money at the residence.

12. At the time of the search, law enforcement discovered various vehicles connected to the residence. For instance, agents discovered a 2007 black Lexus, bearing Ohio license plate number GZA 7070, VIN# JTHBJ46G872129733, parked in the driveway of the Ruskin residence. The vehicle was registered to Courtney Allen. Officers also discovered a 2005 white Chrysler 300, bearing Ohio personalized license plate CORTNER, VIN# 1J4EZ78Y9TC114512, and a 2013 black Dodge Ram pickup truck, bearing Ohio license plate number HHK 3486, VIN# 1C6RR6MTXDS558671, parked on the street in front of the residence. The 2005 Chrysler 300 was registered to Sharon Cortner, and the truck was registered to John Senter V. Law enforcement ultimately transferred all three vehicles to the

Dayton Police Department Evidence Bay, 417 E. Helena St., Dayton, Ohio, where they currently remained.

13. During post-Miranda interviews of the suspects, CORTNER admitted that he had driven the white Chrysler 300 to the residence, and GODDARD acknowledged that he had arrived at the location in the 2013 black Dodge Ram pickup truck.

14. I believe that, given the amount of drugs seized from the residence, the men were not first time participants in the drug trade. (Indeed, GODDARD has a prior federal conviction for drug trafficking). Based on my training and experience, I know that it often takes an extended period of time for individuals to gain trust from sources of supply to obtain that quantity of narcotics. (The drugs seized had street values in the hundreds of thousands of dollars). In short, based on my training and experience, this was not an isolated incident; rather, the men likely had been trafficking drugs for months prior to this incident.

15. Based on training and experience, your Affiant knows that drug dealers frequently use vehicles to facilitate their drug trafficking activities. Drug dealers often use cars and trucks to transport, store or hide narcotics. They often keep in their vehicles cash, firearms, ammunition, and cellular telephones used to engage in their illegal trade. I also know that drug traffickers often hide or keep in their cars receipts for jewelry, money transfers and other assets representing the proceeds of drug trafficking activity.

16. Based on training and experience, I know that drug dealers use cellular phones to communicate with customers, their associates, and their suppliers. It is often common for drug traffickers to have multiple phones because certain phones may be used only for certain purposes. For instance, a trafficker may use one phone just to speak to his supplier, while using

7

a different phone to speak only to his customers. This is a counter-surveillance technique intended to make it harder for law enforcement to identify the user of the phones and his associates. Traffickers commonly use prepaid cellular phones to hide their identity as the user because they generate no billing information, often require little to no identifying information to activate, can sometimes be activated using an alias, and can be easily disposed of should the trafficker believe that law enforcement has identified the phone number.

17. Your Affiant also knows that traffickers commonly text message each other or their customers, such as meeting locations, prices, and other information needed to carry out the sale of drugs (sometimes in code) and do so using cellular telephones, smartphones and smart devices, such as tablets. They commonly store phone numbers for their associates and customers in the electronic phone book/contacts list, often under alias or code names. Your Affiant knows that traffickers, using digital cameras located on their cellular phone or other electronic devices, will sometimes use these devices to take photographs or videos of themselves, their location, their product, their firearms or their associates, which can be electronically stored on, and transmitted from, these electronic devices. Information can also be downloaded from the internet onto the cellular phone or smart devices, such as email, social network information (like "Facebook"), travel information like maps or directions, or photographs. Call data, such as missed calls, received calls, or dialed calls are often electronically stored in the cellular phone. The information electronically stored on a phone can also be evidence of who possessed or used a cellular phone at a given time, can contain direct evidence of drug trafficking acts, and can help identify drug trafficking locations or associates through GPS data. Affiant is aware that there are tools to extract electronic data

8

from a cellular phone so that law enforcement can review it for items of evidentiary value. I also know that drug dealers use applications on Smart Phones or Devices such as an I-Pad to communicate in the manner described above with customers, suppliers and associates.

18. I also know that drug traffickers often threaten violence or use of force against their rivals as well as customers who, for instance, may owe them money. In doing so, drug traffickers often use electronic devices such as cellular telephones, smartphones, tablets, and the like, to send communications referencing violence, use or possession of firearms, or threats.

19. In this modern era, individuals also use smart telephones and smart devices to logon to online banking platforms. I know that drug traffickers often use banking services to transmit money to their domestic and international suppliers.

## CONCLUSION

20. For the reasons detailed above, I submit that this affidavit supports probable cause for a warrant authorizing the search of the Subject Vehicles the items described in Attachment A.

Respectfully submitted,

*Robert M. Buzzard*

Robert M. Buzzard
Special Agent
Federal Bureau of Investigation

Subscribed and sworn to before me
on November 18, 2019:

_____
UNITED STATES MAGISTRATE JUDGE

9

## ATTACHMENT A

## ITEMS TO BE SEIZED

All records, items, evidence, fruits or instrumentalities of the following crimes -- 21 U.S.C. § 841(a)(1) (possession with intent to distribute controlled substances); 21 U.S.C. § 843(b) (use of a telephone communication facility to facilitate a drug trafficking crime); 21 U.S.C. § 846 (conspiracy to possess with intent to distribute controlled substances); 21 U.S.C. § 856 (maintaining a drug premises); and 18 U.S.C. § 924(c) (use and carrying of a firearm during and in relation to a drug trafficking crime) -- including:

a. Illegal controlled substances, including fentanyl, cocaine, marijuana;

b. Firearms, ammunition or other weapons;

c. Cellular telephones, smart phones, tablets, or other electronic devices;

d. Ledgers, notes, or documents identifying customers, prices of drugs, or locations from which drugs are trafficked;

e. Receipts, invoices, or other documents reflecting money transfers, assets, or other financial transactions;

f. Indicia of ownership or use of the vehicle searched.